**Norma RANDLE, Individually, and as Next Friend of John Doe, a Minor, Appellant,**

v.

**STOP N' GO MARKETS OF TEXAS, INC. and National Convenience Stores, Inc., Appellees.**

**No. 01–95–01433–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 2, 1996.

Hugh J. Howerton, Houston, for Appellant.

Dennis S. Dresden, Houston, for Appellees.

Before SCHNEIDER, C.J., and ANDELL and TAFT, JJ.

## OPINION

TAFT, Justice.

In this appeal, we are asked to determine whether a business operator owes a duty to protect customers against intentional third party acts committed off the business premises when the initial contact between the parties occurred on the business premises. Under the facts of this case, we hold there is no such duty and affirm.

This case arises out of the sexual assault of John Doe, a 14–year–old boy. Appellant, Norma Randle, individually and as next friend of John Doe, a minor, appeals from a take-nothing summary judgment in favor of appellees, Stop N' Go Markets of Texas, Inc. (Stop N' Go) and National Convenience Stores, Inc. (NCS).[1] Randle claims that Stop N' Go and NCS were negligent in failing to provide adequate security to prevent the sexual assault against John.

### Facts

John Doe, a 14–year–old boy, entered a Stop N' Go to obtain change from the clerk. As he left, he was followed by an unknown man who, while on Stop N' Go's premises,

---

1. The appellate record does not indicate the relationship between Stop N' Go Markets of Texas, Inc. and National Convenience Stores, Inc.

asked John if he would like to make $25. John answered "Yes." The man said he wanted John to walk him to some apartments.

The man asked John to follow him. John followed the man off Stop N' Go's premises into a wooded area on the adjacent lot. Once in the wooded area, the man put what John thought was a gun to John's back and sexually assaulted him. Neither Stop N' Go nor NCS owned, occupied, or controlled the premises on which John was assaulted.[2]

## Standard of Review

The standards for reviewing a motion for summary judgment are well established. The movants have the burden of showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985). Defendant-movants must present summary judgment proof establishing, as a matter of law, there is no genuine issue of material fact on at least one of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). If the defendants produce sufficient evidence to establish their right to judgment as a matter of law, the plaintiff must set forth sufficient evidence giving rise to a fact issue to avoid summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936–37 (Tex. 1972). On appeal, evidence favorable to the nonmovant will be taken as true; every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984).

## Duty

Randle argues in her sole point of error that the trial court erred in rendering summary judgment because Stop N' Go and NCS owed John a duty of care to protect against criminal acts of third parties. Randle contends that a duty of care arises when criminal conduct is a foreseeable result of the business operator's negligence. Randle concludes it is foreseeable that a business invitee could be injured by such criminal activity because the Stop N' Go in question is located in a high-crime area. Randle further contends that even though John was not sexually molested on Stop N' Go's premises, John was fraudulently lured off the premises onto the adjacent lot after first coming into contact with the unknown assailant on Stop N' Go's premises. Randle claims Stop N' Go and NCS should not be relieved of their duty just because the criminal act was carried over onto the adjacent lot.

Stop N' Go and NCS contend the duty to provide protection is derived from the principle that a party who has the power of control or expulsion is in the best position to protect against the harm. Thus, defendants' duty to provide protection arises from their specific control over safety and security of the premises where the criminal act occurred. Stop N' Go and NCS claim they did not have a duty to protect John against third-party criminal acts here, because the actual criminal act did not occur on their premises.

Duty is one of three essential elements under a negligence cause of action. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). It is the threshold question in a negligence case. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990). There are several interrelated factors to be considered in determining whether defendants owe a particular duty; the foremost and dominant consideration is foreseeability of the risk. *El Chico,* 732 S.W.2d at 311.

As a general rule, defendants have no duty to prevent the criminal acts of a third party who does not act under defendants' supervision or control. *Haight v. Savoy Apartments,* 814 S.W.2d 849, 853 (Tex. App.—Houston [1st Dist.] 1991, writ denied). However, an exception exists when the criminal conduct is the foreseeable result of defendants' negligence. *Midkiff v. Hines,* 866 S.W.2d 328, 332 (Tex.App.—Houston [1st Dist.] 1993, no writ); *LaFleur v. Astrodome– Astrohall Stadium,* 751 S.W.2d 563, 564 (Tex.

---

**2.** As set forth in Randle's third and fourth amended petitions, Johnny Mitchell owned the wooded premises where John was sexually assaulted. After Stop N' Go and NCS's motion for summary judgment was granted, the trial court granted a motion to sever Randle's claims against Stop N' Go and NCS from those against Mitchell.

App.—Houston [1st Dist.] 1988, no writ). In such cases, defendants have a duty to prevent injuries to others if it reasonably appears, or should appear, to them that others in the exercise of their lawful rights may be injured. *El Chico*, 732 S.W.2d at 314.

However, most cases discussing tort liability for third-party criminal acts share a common circumstance: *the criminal act for which the negligent defendants are sued occurs on the defendants' premises. LaFleur*, 751 S.W.2d at 565 (citations omitted). The duty to provide protection arises from defendants' "power of control or expulsion" that their occupation of the premises gives them over the conduct of a third person who may be present. *Id.*

Randle acknowledges *LaFleur*, but contends it is distinguishable. In *LaFleur*, the plaintiff's first contact with the third party who assaulted her occurred after she left the defendant's premises. Randle contends the defendant did not owe a duty to protect LaFleur because the defendant did not control the area outside the perimeter of its premises and because the third party did not initially contact the plaintiff on defendant's property. In this case, however, John's initial contact with the third party occurred on Stop N' Go's premises, and thus, Randle argues, Stop N' Go and NCS owed a duty to protect John from the criminal activity that was an outcrop of the initial contact.

Randle also argues this is a case with unique facts like *El Chico*. Randle points out that in *LaFleur*, this Court made no attempt to distinguish *El Chico* because of its unique facts.[3] Randle also relies on the similarity between this case and *El Chico* in that both cases involved injuries that occurred off premises.

The key to resolving this case is the principle already stated above: the duty to provide protection arises from defendants' "power of control or expulsion" that their occupation of the premises gives them over the conduct of a third person who may be present. *LaFleur*, 751 S.W.2d at 565. The conduct of the third person in this case, while on Stop N' Go and NCS's premises, consisted solely

of conversation with John. Even viewing the conversation, in the light most favorable to Randle, as part of the criminal plan of the third person, we decline to hold that this conversation on Stop N' Go and NCS's premises gave rise to a duty to control or expel a person who engaged the customer in conversation.

Randle relies on numerous police reports of crimes committed at the Stop N' Go during the year preceding the assault on John. Nevertheless, Randle provided no evidence of other instances of crimes committed off premises by third parties who lured customers by conversing with them on Stop N' Go and NCS's premises. Thus, there is no summary judgment evidence to indicate that Stop N' Go and NCS had knowledge of any similar prior incidents and, therefore, Stop N' Go and NCS could not have foreseen the need to take action against third-party criminal activity occurring off their premises as a result of on-premise contact. *See Holcomb v. Randall's Food Markets, Inc.*, 916 S.W.2d 512, 515 (Tex.App.—Houston [1st Dist.] 1995, no writ) (holding that summary judgment proof simply did not rise to level of foreseeability needed to establish off-premises duty to warn even though Randalls had previously received letter from husband of woman who was allegedly attacked and robbed after being followed home from Randalls).

The summary judgment proof establishes as a matter of law that there is no genuine issue of fact that Stop N' Go and NCS could have foreseen the risk of injury to John by someone who merely engaged him in conversation on their premises. Therefore, we conclude Stop N' Go and NCS had no duty to protect John against the sexual assault that occurred off their premises.

### Conclusion

We overrule appellant's sole point of error and affirm the trial court's summary judgment.

---

**3.** Nevertheless, *El Chico* is easily distinguishable. The court found a duty of defendants as bar owners because they were at least partially responsible for creating the danger by continuing to serve alcohol to persons who were already intoxicated. *El Chico*, 732 S.W.2d at 311–12.